IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECILIA RUBIO,<br><br>  Plaintiff,<br><br>  vs.<br><br>JO ANNE BARNART,<br>Commissioner of Social Security,<br><br>  Defendant.<br>_____ / | CASE NO. CV-F-04-6611 OWW LJO<br><br>**FINDINGS AND RECOMMENDATIONS RE MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc. 10) |

Plaintiff Cecilia Rubio ("claimant") seeks judicial review of an administrative decision denying her claim for Disability Insurance Benefits under the Social Security Act, Title II ("Act"). Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

Claimant filed her complaint on November 24, 2004 and her opening brief on July 13, 2005. The Commissioner filed her opposition to the appeal on August 15, 2005. Claimant did not file a reply brief.

## BACKGROUND

### Administrative Proceedings

Claimant filed an application for Disability Insurance Benefits under the Social Security Act on December 23, 2002. (Administrative Record "AR" 68-70, 78-93.) She alleges a disability onset of December 1, 2001 due to leg and knee pain, arm numbness, stiffness and body pain. (AR 79.) Claimant's application for benefits was denied and denied upon reconsideration. (AR 47-50, 52-56.)

Claimant's application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on March 26, 2004. (AR 16-20.) The Appeals Council denied review. (AR 5-8.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

### **Claimant's Background and Work Experience**

Claimant was born on August 24, 1955. (AR 28.) Claimant completed high school. (AR 28.) Her past relevant work is as a customer service representative. (AR 29.)

### **Medical History**

The pertinent medical history is summarized as follows.

Claimant injured her right leg in a motor vehicle accident on December 1, 2001. (AR 105.) She was given a knee immoblizer and told to use crutches and no weight bearing on the knee. (AR 101-104.) Claimant was admitted for surgery on the knee on February 6, 2002 by Robert E. Caton, M.D. (AR 109.) She was admitted for an open reduction and internal fixation of the right lateral tibial plateau fracture, arthrotomy of the knee joint with meniscectomy and bone grafting. (AR 109.) Claimant was referred for rehabilitation. (AR 128.)

Claimant saw Dr. Caton for follow up on March 14, 2002. (AR 198.) X-rays showed good continued healing and she was making good progress. (AR 198.) A month later, treatment notes from Dr. Caton showed claimant continued to make progress and she was scheduled to start physical therapy. (AR 197.) A month later, in May 2002, Dr. Caton approved her to progressively put weight on the knee. (AR 195.) In July 2002, Dr. Caton reported that claimant was up and walking around and doing reasonably well and surgery was planned to remove the hardware. (AR 192.)

On December 19, 2002, claimant was seen by Dr. Caton for an injury to her elbow and she was placed in a cast. (AR 190.) A month later the cast was removed and Dr. Caton said she "may work with general range of motion." (AR 189.) X-rays of her right forearm on December 13, 2002 was normal. X-rays of her right shoulder on December 13, 2002 was normal. (AR 143.)

In March 2003, claimant was sent for an MRI which showed a tear of the lateral meniscus and degenerative changes. (AR 188.) Dr. Caton recommended operative arthroscopy. (AR 188.) On March 28, 2003, claimant was admitted for operative arthroscopy of the right knee. (AR 146.) Claimant tolerated the procedure well. (AR 149.)

1         On April 7, 2003, claimant saw Dr. Caton for a follow up exam. (AR 185.) He reported that the
2    wound looks good and is healing nicely. (AR 185.) On May 5, 2003, claimant saw Dr. Caton for a
3    follow up exam. (AR 184.) He wanted to get her started on a physical therapy for her knee. (AR 184.)
4         On May 8, 2003, Dr. Caton reported claimant had arthroscopy procedure on March 28, 2003 for
5    removal of the medial meniscus and removal of the hardware from the tibial plateau fracture. (AR 122.)
6    Range of motion was 100 percent for knee flexion, and 0 percent for knee extension. She was prescribed
7    a full scale rehabilitation program. (AR 122.)
8         Treatment notes in May 2003 record that the knee was improving and swelling decreasing. (AR
9    120-121.)
10        State Agency physician, Sandra Clancey, M.D., completed the Physical Residual Functional
11   Capacity form on May 22, 2003. (AR 152-159.) She opined that claimant could lift 20 pounds
12   occasionally and 10 pounds frequently and stand/walk at least 2 hours in an 8-hour workday and sit 6
13   hours in and 8-hour workday. (AR 153.) She was limited in push/pull in the lower extremities. (AR
14   153.) Dr. Clancey opined that claimant has postural limitations which limited to occasionally climbing,
15   balancing, stooping, kneeling, crouching, and crawling. (AR 154.)
16        On July 7, 2003, claimant saw Dr. Caton. (AR 182.) He reported that she has good flexion but
17   lacks about 15 degrees of full extension. He reported that she will take anti-inflammatory medication
18   for her right elbow and may do activities as tolerated to the right upper extremity. (AR 182.) He said
19   that claimant could perform a semi-sedentary job in which she mostly sits. (AR 183.) He found long
20   term conservative care only is warranted and that at some point she will need a knee replacement. (AR
21   183.)
22        Claimant saw J.C. Gentry, M.D. in June 2003. (AR 162-163.) Claimant reported that she was
23   applying for disability due to an accident. Claimant said she had developed left knee pain and had fallen
24   twice since the accident. She said she had neuropathy in her feet, and had developed neck problems,
25   numbness in her hands and feet and generalized stiffness. She complained of shoulder and elbow pain,
26   increasing with repetitive motions. Dr. Gentry found Claimant had a good range of motion in both
27   shoulders and hips, and diagnosed musculoskeletal pain R/O (rule out) arthritis. (AR 164).
28        In July 2003, claimant again saw Dr. Gentry. (AR 163.) Claimant reported complaints of

generalized stiffness with no improvement using muscle relaxants. She also complained of tingling and numbness in her hands while gripping or carrying objects, bilateral wrist and elbow pain, hip and knee stiffness, neck and shoulder pain and ankle weakness. She said she had been taking Ibuprofen since her accident which relieved her pain. She stopped taking the medication because she had developed a stomach problem. Upon examination, claimant's neck was supple, she had good ROM in her shoulders, her right elbow was tender, her chest and lungs clear, both knees were tender, she had no neurological deficits and her grip strength was equal bilaterally. She was diagnosed with chronic generalized pain, and possible fibromyalgia. Claimant requested that Dr. Gentry fill out disability papers for her attorney. (AR 163). Dr. Gentry completed a Questionnaire indicating that claimant had generalized (joint) stiffness, hand numbness and joint pain, especially in her right knee, with decreased strength in her arms and legs. Dr. Gentry reported that claimant could sit for two hours at a time, for up to six hours in an eight-hour day, and stand/walk thirty to sixty minutes, for up to two hours in an eight-hour day and was restricted from repetitive hand grasping, pushing or pulling. Dr. Gentry indicated that since she had only seen claimant once in June and once in July, so she was not able to determine when claimant's impairments started. (AR 165.)

On July 25, 2003, claimant returned to Dr. Gentry with reports of numbness in hands and feet and neck pain. (AR 220.) Dr. Gentry found decreased range of motion in the shoulders and was unable to lift to level of shoulder. (AR 220.) She was diagnosed with arthritis R/O (rule out) degenerative disc disease. (AR 220). On return to Dr. Gentry, claimant complained of urinary frequency. She requested a release to return to work, and indicated that, although she was applying for long-term disability, she needed to have finances. She indicated that she had a work release from Dr. Caton with restrictions for semi-sedentary work. Her weight was also discussed and exercising on a stationary bike was recommended. (AR 219). On December 8, 2003, with the same complaints, Dr. Gentry suggested claimant continue exercises, increased Ibuprofin. (AR 218.)

On August 13, 2003, Dr. Caton prepared a questionnaire on claimant's disability. (AR 181.) He reported that claimant is able to sit 8-hours at a time without a break, stand and/or walk ½ hour in a day. He stated that claimant would need to lie down or elevate her legs 1 to 2 times in an 8-hour day for 10 minutes. (AR 181.)

On October 28, 2003, claimant was evaluated by Ana Maria DeVilliers, M.D. (AR 205.) Claimant reported pain and stiffness in the neck and back with pain radiating into her right shoulder. (AR 205.) From review of the x-rays, Dr. DeVilliers found slight degenerative changes but no significant neural foraminal encroachment. (AR 205.) She recommended physical therapy. (AR 205.)

Claimant received physical therapy for the stiffness in her neck and back, and by December 2003, it was reported that her condition had improved. (AR 209-210, 214-215.)

### Hearing Testimony

Claimant testified that she became disabled on December 1, 2001 as the result of an automobile accident. (AR 28.) She suffered a right leg fracture and she has arthritis and numbness in her arms. (AR 28-29.) She lives alone and is able to do her own household chores, cooking, dishes, laundry, grocery shopping. (AR 29-30.) For exercise, she rides a stationary bike for about a half an hour. (AR 30.) She testified that she does not have side effects from her pain medications. (AR 31.) She testified she can walk or stand for a half an hour, sit for a half an hour and lift less than 5 pounds. (AR 32.) She testified that she feels pain through out her entire body. (AR 32.) She described her pain as a 7 out of 10 and constant. (AR 33.) She testified that she had surgery to her knee and it helped because she is walking again. (AR 33.) She testified that the knee is getting weaker. (AR 34.) She said she has problems doing the household chores. (AR 34.) She said her doctors told her to exercise for the pain in her neck, back and knee. (AR 34.) She elevates her leg every half an hour. (AR 35.) She testified she gained about 50 pounds since she was injured and she is at 260 at 5'8". (AR 36.) She testified that her hands are weak and stiff due to the pain in her neck. (AR 37.) She has problems grasping and handling and can only use her hands for about half an hour. (AR 37.)

Vocational Expert ("VE"), Susan Moranda, testified. Claimant's past relevant work as a customer service clerk was light exertional and as performed is sedentary, semi-skilled. (AR 39.) In the first hypothetical to the VE, the ALJ posed that a person can sit 8 out of an 8 hour workday, stand/walk one half hour, and can lift 20 pounds occasionally and frequently 10 pounds. (AR 39.) The VE testified that claimant could perform her past relevant work. (AR 40.) In the second hypothetical, the person can sit six hours out of eight, stand/walk two hours; lift occasionally 20 pounds and frequently 10 pounds, is limited in the lower extremity for pushing and pulling. (AR 40.) The VE

testified that claimant could not perform her past position as she performed it or as it is performed in the national economy. (AR 40.) Other jobs she could perform would be cashier and small parts assembler. (AR 41.)

## **ALJ Findings**

In her March 26, 2004 decision, the ALJ characterized the "primary issue" before her as whether claimant was disabled. (AR 15.) In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 19-20):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §404.1520(b).

4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The ALJ finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The ALJ has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment. 20 CFR §§404.1527.

7. The claimant has the following residual functional capacity: a range of sedentary work, with abilities to sit 8 hours in a normal workday, stand one-half hour in a normal workday, walk one-half hour in a normal workday, and lift/carry 20 lbs occasionally and 10 lbs frequently.

8. The claimant's past relevant work as a customer service clerk did not require the performance of work-related activities precluded by her residual functional capacity. 20 CFR §404.1565.

9. The claimant's medically determinable right leg fracture and arthritis do not prevent the

1  claimant from performing her past relevant work.

2  10.    The claimant was not under a "disability" as defined in the Social Security Act, at any
3         time through the date of the decision. 20 CFR §404.1520(e).

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ's erred as follows: (1) The ALJ improperly reviewed claimant's testimony, (2) improperly reviewed the severity of claimant's impairments, (3) did not give proper weight to the treating physicians' opinions, and (4) should have considered a closed period of disability.

### The ALJ's Finding of Residual Functional Capacity

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can

be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382(a)(3)(A).

The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546.  "Residual functional capacity" is the phrase used by the Commissioner to denote a claimant's ability to perform work-related tasks despite his physical or mental impairments.  20 C.F.R. §§ 404.1545(a) and 416.945(a).  Categories of residual functional capacity include sedentary, light, medium, heavy and very heavy work.  20 C.F.R. §§ 404.1567 and 416.967.

Here, the ALJ found claimant capable of sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. §§ 404.1567(a) and 416.967(a).

**Claimant's Testimony**

Claimant argues that the ALJ only discussed claimant's testimony in "4 lines" in the decision and failed to review all seven criteria as stated in SSR 96-7p.

A claimant's credibility generally becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective pain statements may tell of greater limitations than can medical evidence alone. Social Security Ruling (SSR) 96-7p (1996); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). For this reason, the ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence. *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir.1989). To determine whether the claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony.  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ "may disregard

8

unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements." *Tonapetyan v. Halter*, 242 F.3d at 1147, 1148.

The ALJ partially accepted claimant's complaints of pain. The ALJ considered ordinary techniques of credibility in rejecting claimant's full complaints of debilitating pain. The ALJ found that claimant's impairments can reasonably be expected to produce some of the pain and symptoms alleged, but the ALJ concluded that the alleged pain was not fully supported: "The undersigned finds the claimant's allegations regarding her limitations are not totally credible, when compared with the entire medical record. The claimant's allegations regarding her limitations are not totally credible because the subject allegations are not supported by specific objective findings." (AR 19.) While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ relied upon the medical evidence in the record. The ALJ noted that her treating physicians, Dr. Caton and Dr. Gentry, limited claimant to sedentary work, with restrictions on walking. Those limitations were consistent with the ALJ's finding of residual functional capacity.

The ALJ also noted the scope and breath of claimant's activities of daily living:

> "For example, the claimant lives by herself in a house and handles her own household chores, except only for some yard work that her parents help her with, as she testified at the hearing. She also drives a car one hour at a time and exercises on a stationary bicycle about 30 minutes at a time." (AR 19.)

*See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (An ability to take care of personal needs, prepare easy meals, do light housework, and shop for some groceries is inconsistent with the presence of a condition which would preclude all work activity.) If a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Claimant next argues that the ALJ failed to consider all seven criteria from SSR 96-7p.

Claimant has not cited to any authority, aside from SSR 96-7p, for the proposition that the ALJ

1  must consider *all* of the 96-7p factors. To the contrary, the Ninth Circuit has upheld ALJ's findings on
2  less than an evaluation of all of the SSR 96-7p listed factors. "In assessing the claimant's credibility, the
3  ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation
4  for truthfulness and any inconsistent statements in [his] testimony. The ALJ must give specific,
5  convincing reasons for rejecting the claimant's subjective statements." *Tonapetyan v. Halter*, 242 F.3d
6  1144, 1147, 1148 (9th Cir. 2001) (upholding adverse credibility finding where ALJ cited claimant's "lack
7  of cooperation at the hearing, her presentation at the hearing, her tendency to exaggerate, her inconsistent
8  statements, and her lack of cooperation during consultative examinations"); *Orteza v. Shalala*, 50 F.3d
9  748 (9th Cir.1995) (upholding adverse credibility finding where ALJ identified treating physician's
10 statement as to lack of objective evidence, pointing to the scope of activities identified in claimant's
11 initial application, no medication side effects or prescription medicine.); *Meanel v. Apfel*, 172 F.3d 1111
12 (9th Cir. 1999) (upholding adverse credibility finding on claimant's inconsistent testimony with that of
13 treating physician's notes, minimal conservative treatment for alleged incapacitating pain).

14 Claimant also argues that "[h]er testimony was ignored in the decision for the most part. Much
15 of it was misstated." (Opening brief, p.3:28-p.4:2.)

16 Claimant's brief fails to develop these points and the Court will not speculate on them. When
17 an ALJ has made specific findings to justify a decision to disbelieve subjective complaints and the
18 findings are supported by substantial evidence, a court may not second guess the decision. *Fair v.*
19 *Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

## Review of Impairments

21 Claimant argues that the ALJ erred in only finding her leg/knee impairment and arthritis severe.
22 Claimant argues the ALJ erred in not finding severe her obesity, elbow, arm numbness and degenerative
23 disc disease. (Opening Brief p.4.)

24 The ALJ found only the leg impairment and arthritis severe:

25 "The medical evidence indicates that the claimant has a right leg fracture
   and arthritis impairments that are severe within the meaning of the
26 Regulations but not severe enough to meet or medically equal one of the
   impairments listed in Appendix 1, Subpart P, Regulations No.4." (AR
27 17.)

28 The ALJ considered the nature and extent of claimant's leg and knee injury and the claimant's required

additional surgery:

> "The medical record shows that the claimant injured her right leg in a motor vehicle accident on December 1, 2001. Two months later it was determined that she had originally received a severe injury to the right tibial plateau, and on February 6, 2002, she underwent surgery including bone grafting for the malunion. She underwent physical therapy and other conservative treatment but continued to experience right knee pain, and in March 2003 she underwent arthroscopy for the repair of the medial meniscus and removal of the hardware from the tibial plateau fracture site." (AR 18) (Evidence citations omitted.)

The ALJ did not find any of her other impairments severe. The Social Security regulations define severe impairment as an impairment which significantly limits a claimant's "ability to do basic work activities." 20 C.F.R. §§§§ 404.1521, 416.921; *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). "Basic work activities" are defined as including such capabilities as walking/sitting/standing/lifting, 20 C.F.R. § 404.1521(b)(1),(2); understanding, carrying out, and remembering simple instructions, 20 C.F.R. § 404.1521(b)(3); use of judgment, 20 C.F.R. § 404.1521(b)(4); responding appropriately to supervision, co-workers and usual work situations, 20 C.F.R. § 404.1521(b)(5); and dealing with changes in a routine work setting, 20 C.F.R. § 404.1521(b)(6). If the impairment does not significantly limit a claimant's physical or mental ability to do basic work activities, the impairment is not severe. *Bustamante v. Massanari*, 262 F.3d at 955

The ALJ found that the medical record does not contain sufficient support for the alleged impairment for numbness of both arms or cervical disc disease. Indeed, there is substantial evidence in the Record to support the ALJ's rejection of these claims as severe. Claimant injured her arm in December 2002 and was put in a cast. A month later the cast was removed and Dr. Caton said she "may work with general range of motion." In July 2003, Dr. Caton advised her to continue using Ibuprofen (AR 182-183). In June 2003, claimant saw Dr. Gentry for her complaints. (AR 164). Dr. Gentry found that claimant had good range of motion in her shoulders and her grip strength was equal bilaterally. (AR 163). He restricted claimant from repetitive grasping, pushing and pulling, but indicated that he did not know when the impairment began, because he had only seen her on "6/10 and 7/2/03." (AR 165). In October 2003, Dr. DeVillers examined claimant and at that time her physical examination was

essentially normal, with slight degenerative changes.[1] She was instructed on home physical therapy. (AR. 205-206). Thus, the medical evidence, here, does not establish the existence of a severe medically determinable impairment.

Claimant finally argues that the ALJ did not consider her obesity.

An ALJ must consider obesity in determinations of disability. *Hammock v. Bowen*, 879 F.2d 498, 503-504 (9th Cir.1989) (en banc). See also Social Security Ruling 02-01P (discussing the evaluation of obesity in disability claims), superceding Social Security Ruling (No. 00-3p). SSR 02-01P states, that as the initial step in the sequential evaluation process, "when establishing the existence of obesity, we will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build." (SSR 02-01P, para. 4.)

While the SSR states that the Social Security Administration will evaluate effects of obesity, it remains claimant's burden to show that obesity has some effect on her functional capacity. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.) Claimant must come forward with some evidence of how her obesity limits her functioning. *Burch v. Barnhart*, 400 F.3d at 683 ("Even on appeal, Burch has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis.")

There is evidence that Dr. Caton suggested that claimant's obesity would compound her knee problem. (See e.g., AR 184.) Dr. Caton had reported that claimant would ultimately require knee replacement. Nonetheless, Dr. Caton did not fully restrict claimant's functional capacity. The ALJ adopted the functional capacity assessed by Dr. Caton. (AR 18.) Neither any other treatment notes nor any other diagnoses addressed claimant's limitations due to obesity. Moreover, claimant did not present any testimony or other evidence at her hearing that her obesity impaired her ability to work. See Social Security Ruling 02-01P ("[W]e will not make assumptions about the severity or functional effects of

---

[1] Claimant argues she was found to have "severe degenerative cervical disc disease," citing AR 205. (Opening Brief p.4:19.) To the contrary, Dr. DeVilliers found from the MRI that "the cervical spine that show degenerative changes at 4-5 and 5-6 and slightly at 6-7, but without evidence of significant neural foraminal encroachment and per the x-ray report from July 2003, there is no evidence of neural foraminal encroachment on the oblique views." (AR 205.)

obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.")

### Consideration of Dr. Caton's and Dr. Gentry's Opinions

Claimant argues that the ALJ did not accurately consider Dr. Caton's and Dr. Gentry's opinions.

Dr. Caton had stated that claimant could perform semi-sedentary jobs, with minimal walking of up to one half hour. (AR 183). His form questionnaire stated that claimant was precluded from any full time work, because she could not walk more than one half hour a day, but could sit for eight hours. (AR 181). The ALJ accepted Dr. Caton's findings to the extent they were consistent with the performance of sedentary work. (AR 18). The VE testified that with Dr. Caton's restrictions, claimant could perform her past relevant work. Dr. Caton's opinion regarding Claimant's inability to perform full time work is a conclusion reserved for the Commissioner. See 20 C.F.R. § 404.1527(e)(1) (opinions on issues reserved for the Commissioner). The ALJ was not required to give full weight to this part of Dr. Caton's opinion. See *Magallanes v. Bowen*, 881 F. 2d 747, 753 (9th Cir. 1989) (ALJ not required to adopt all of a physician's findings in order to find his opinion contained substantial evidence).

On a similar questionnaire, Dr. Gentry stated that claimant was not precluded from performing full time work, but should be restricted to doing no more than sedentary work. (AR 165.) His assessed limitations were consistent with sedentary work. Dr. Gentry also restricted claimant from repetitive hand grasping, pulling or pushing, but indicated he did not know when her impairments began. (AR 165.) The ALJ gave Dr. Gentry's limitations reduced weight because Dr. Gentry was "unable to determine the effective time period for the evaluation because she evaluated the claimant only once in June 2003 and once in July 2003." (AR 18). A treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. See *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

/////

**Claimant is Not Entitled to A Closed Period of Consideration**

Claimant argues that, having found claimant functionally capable of work, the ALJ should instead have considered a closed period of time for her disability - from the date of alleged onset to the date of her rehabilitation from the second surgery. (Opening Brief p.5:26-28.) Claimant does not cite any authority for her proposition.

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Claimant failed to prove that she is unable to perform her past relevant work. There is substantial evidence in the Record that her past relevant work is sedentary and fits the limitations imposed upon claimant. The claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents her from engaging in his previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). Claimant failed this burden.

**CONCLUSION**

The Court RECOMMENDS as follows:

The Court finds no error in the ALJ's analysis. As such, the ALJ's decision is supported by substantial evidence in the Record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Cecilia Rubio.

1  These findings and recommendations are submitted to United States District Judge Oliver W.
2  Wanger pursuant to 28 U.S.C. § 636(b)(l) and this Court's Local Rule 72-304.  Within 10 days of the
3  date of service of these findings and recommendations, plaintiff may file written objections with the
4  Court and serve a copy on all parties and the Magistrate Judge in compliance with this Court's Local
5  Rule 72-304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings
6  and Recommendations."  The Court will then review the Magistrate Judge's ruling pursuant to 28
7  U.S.C. § 636(b)(1)(C).  Plaintiff is advised that failure to file objections within the specified time
8  may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.
9  1991).

10  IT IS SO ORDERED.

11  **Dated:    September 27, 2005**            /s/ Lawrence J. O'Neill
    b9ed48                                      UNITED STATES MAGISTRATE JUDGE